```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
Trustees of the International
Union of Operating Engineers            DECISION AND ORDER
Local 30 Benefit Funds,                 04-CV-1938 (DRH)(WDW)

            Plaintiff

      -against-

Trans Island Lock & Safe,
Inc.,

            Defendant.
------------------------------X
A P P E A R A N C E S:

For Plaintiff:
    Barnes, Iaccarino, Virginia, Ambinder &
    Shepherd, PLLC
    3 Surrey Lane
    Hempstead, New York 11550
      By: Danielle M. Carney, Esq.

HURLEY, District Judge
```

## INTRODUCTION

Plaintiff, Trustees of the International Union of Operating Engineers Local 30 Benefit Funds ("Funds" or "plaintiff") sued Trans Island Lock & Safe, Inc. ("Trans Island" or "defendant") to compel payment of unpaid ERISA benefit contributions, together with interest, attorneys' fees, statutory damages, and costs.

Affidavits of service indicate that the original, and amended summons and complaints were served on Trans Island. Trans Island never filed an answer or otherwise appeared in the action. Accordingly, this Court granted a default judgment in favor of the Funds on October 5, 2004, and referred the matter to

Magistrate Judge William D. Wall for a Report and Recommendation on the issue of damages.  By Report and Recommendation dated November 17, 2005, Judge Wall recommended that the monetary relief sought by the Funds be denied in toto given the inadequacy of their submissions.  In an effort to cure the deficiencies cited by Judge Wall, the Funds submitted additional documents to me, to wit, the affirmation of Danielle M. Carney, Esq., dated November 21, 2005, and the affidavit of Kristen A. Borruso, identified as the "Fund Manager," dated November 22, 2005.

### COURT'S ROLE IN ESTABLISHING DAMAGES

The Court has discretion in determining what proofs are necessary to establish the amount due following a default.  Trans Island's non-appearance in the action was sufficient to establish its liability to the Funds but not the amount thereof.  Given the failure of the Amended Complaint to detail the number of employees, hours worked, and other variables underlying the plaintiff's unpaid contributions demand of $25,563.50 for the period from October 2003 through February 2004, coupled with the request in the "Third Claim for Relief" for such additional sums as may accrue after February 2004 to the date of judgment, the amount sought is not a sum certain.  Indeed, as noted by counsel for the Funds, the amount sought is an estimate based on earlier remittance reports filed by Trans Island.  (Carney Nov. 21, 2005 Aff., ¶ 4.)  Under such circumstances, an effort by the Court

must be made to assure that the damages demanded are consistent with the underlying facts.

### INADEQUACIES IN PROOF PRESENTED TO JUDGE WALL

Inadequate information was provided to Judge Wall to permit the realization of the above mentioned goal. By way of example, Fund Manager Borruso in her September 21, 2005 affidavit identified the amount of delinquent contributions for the period from "October 2003 through August 2004" as $49,363.50. (Borruso Sept. 21, 2000 Aff., ¶ 5.) But the derivation of that sum was not decipherable from the materials furnished. We know it was not simply the product of extrapolation based on the $25,563.50 demanded in the complaint for the then five months of unpaid contributions (i.e., from October 2003 through February 2004) because the corresponding figure for the eleven month period, i.e., from October 2003 through August 2004, would be considerably in excess of $49,363.50.

By way of another example of the inadequate information provided to Judge Wall, consider the Funds' claim for interest. By document entitled "STATEMENT OF DAMAGES" filed on September 28, 2004, the Funds sought "10%" of the purported delinquent contributions of $49,363.50 as interest. Yet, in Fund Manager Borruso's affidavit submitted a year later, the applicable interest rate is reported to be 4%, devoid of any reference to the earlier, apparently erroneously provided, 10% figure. And

the Funds' methodology in computing the interest due is likewise troubling. As explained by Fund Manager Borruso to Judge Wall:

> As a result of the failure of Trans Island Lock & Safe, Inc. to pay the contributions due the Benefit Funds for the months of October, 2003 through August, 2004, Trans Island Lock & Safe, Inc. owes interest from the Due Date in total amount of $3,949.08 ($1,974.54 is 4% of contributions owed [i.e. $49,263.50] x 2 years [i.e. from October 2003]).

(Borruso Sept. 20, 2005 Aff., ¶ 6.)

The delinquent payments accumulated over eleven months beginning in October 2003. Therefore, it would seem that the interest should run on each delinquent payment as it became due rather than on the total of all of the delinquencies measured from the date of the first missed payment. The Funds offer no explanation for their counterintuitive approach.

ADDITIONAL MATERIALS SUBMITTED TO THIS COURT[1]

In Borruso's current affidavit, unlike the earlier one presented to Judge Wall, the methodology used to compute the amount of the delinquent contributions is explained. That

---

[1] The Funds did not file technical objections to Judge Wall's Report and Recommendation. Rather they, apparently recognizing that Judge Wall's recommendation rested solely on the inadequacy of the materials furnished, have presented additional information for me to consider. Of course that information should have been furnished to Judge Wall in the first instance. However, since this Court's function is to review the situation de novo, and given that a considerable amount of time has already been devoted to what should have been a relatively straight forward process, this Court will review those materials in deciding the present application.

explanation reads as follows:

> In reviewing the Employer's records, I found that the Employer stopped submitting contributions and reports in September 2003. There is no written communication in our files from the Employer terminating the Collective Bargaining Agreement. According to the Trust Document page 34 Article VI sec 6.03 an Employer shall continue to pay contributions as long as the Employer [is] so obligated pursuant to the Collective Bargaining Agreement. The Collective Bargaining Agreement with the Employer continued to May 31, 2004 and thereafter since it was not terminated by the Employer.
>
> Accordingly, upon my review of the file (the fund employee who did the original calculation has retired form the fund), the Fund calculated the delinquency amount herein as follows: took the average monthly contributions previously submitted by the Employer for 2003 totaling $4,185.60 (based on a rate of $6.54 with 3 employees and an average 160 to 200 hours per month) multiplied by 11 months (including October 2003 through to and including August 2004) totaling $46,041.60 plus the addition of $1,263.00 representing a debit owed by the Employer from a previous remittance report bringing the delinquency to $47,304.60.

(Borruso Nov. 22, 2005 Aff., ¶ 3.)

Central to the above analysis is the $4,185.60 figure, represented to be the average monthly contribution made by Trans Island in 2003.[2]

However, the numbers provided (viz. a $6.54 rate, 3

---

[2] This figure presumably applies to the first nine months of that year, i.e. through September of 2003. Accordingly, the denominator used to determine the average payment for that year was nine, not twelve.

-5-

employees, and an average of 160 to 200 hours per month[3]) are inconsistent with the claimed monthly average contribution. The rate and number of employees are not said to be averages; thus, presumably, those two items were the same for each month in 2003. The one variable identified is the hours per month, said to vary from 160 to 200 hours.

If it is assumed that plaintiff's three covered employees worked an average of 200 hours combined (i.e. 66 ⅔ hours each) for each month in 2003 for which the required reports were filed, the required monthly contribution would have been $1,308.00 (200 hours total x $6.54 per hour). If, on the other hand, each of the employees worked 200 hours, the corresponding figure would be $3,924.00. Which is to say, this Court — even with additional information provided — is not, like Judge Wall — in a position to determine the amount of the delinquent contributions. This inability is traceable to the inadequacies of plaintiff's submissions.[4]

---

[3] An "average" represents a "single value . . .that summarizes . . . the general significance of a set of unequal values." Merriam Webster's Collegiate Dictionary, 11th ed. But prescinding from that observation, whether the "160 to 200 hours" per month is an "average" per employee, or the average for all three employees combined, is unclear.

[4] On the interest issue, the Funds currently request $3,784.36 ($47,304.60 x .04 x 2 years), with the proviso that they will "accept any interest the Court deems appropriate." (Borruso Nov. 22, 2005 Aff., ¶ 5.) To the extent the proviso may be interpreted as an invitation for this Court to do counsel's job in endeavoring to calculate the correct amount of interest

OPTIONS AVAILABLE TO COURT

Judge Wall has recommended that plaintiff's request for damages be denied due to a woeful failure of proof. Surely that suggested course of action would be, if adopted, both reasonable and appropriate. However, it is clear that Trans Island owes monies to the Funds. Rather than penalize plaintiff because of counsel's shortcomings, plaintiff will be afforded one more chance to get it right.

Plaintiff is directed to furnish to this Court, by January 27, 2006, a corrected affidavit by the Fund Manager, or another person possessing the requisite knowledge, detailing the amounts sought and the precise step-by-step methodology — double-checked — that was employed in arriving at those figures. If estimates are required in some instances, the basis for those estimates must be fully explained. Should the amounts requested and/or methodology employed depend, in whole or in part, on provisions in the Collective Bargaining Agreement or other document, the relevant materials shall be fully identified in the affidavit and attached thereto.

Should the plaintiff fail to file the amended affidavit on or before the date designated, or if the submission furnished fails to satisfy one or more of the standards established above, the requested default judgment will be denied in toto, with

---

due, the invitation is declined.

prejudice, and the case will be closed.

CONCLUSION

For the reasons indicated, the Funds' request for damages is denied, without prejudice.

SO ORDERED.

Dated: Central Islip, New York
       January 5, 2006

_____
DENIS R. HURLEY, U.S.D.J.